(No. 19107.—

DAVID T. BJORK, Appellee, *vs.* B. E. SAFFORD *et al.* Appellants.

*Opinion filed December 20, 1928—Rehearing denied Feb. 7, 1929.*

MAX PRZYBORSKI, and DANIEL RILEY MCMASTER, (WALTER F. DODD, and HENRY P. CHANDLER, of counsel,) for appellants.

MARSHALL & MARSHALL, (ALEXANDER H. MARSHALL, of counsel,) for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal by the zoning board of appeals of the village of Lake Bluff from a judgment of the county court of Lake county reversing the decision of that board and ordering the issuance of a building permit to appellee. The case was presented to the trial court on writ of *certiorari,* as provided by the Zoning act. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires that the case be taken directly to this court.

Lake Bluff is a suburban residential community on the shore of Lake Michigan of about 1500 inhabitants, lying about thirty miles north of Chicago, and is largely a one-family dwelling community, with no manufacturing and a small local business area. The zoning ordinance of Lake Bluff came into effect on January 8, 1924, and has remained unchanged since that date. Five types of districts were created, "A," "B" and "C" residence districts, and business districts and commercial districts. The bulk of the village area is zoned in "A" and "B" residence districts for single-family dwellings. Flats are expressly permitted in "C" residence districts, business districts and commercial districts. The property here involved belonging to appellee is in the "C" residence district, as to which it was provided by the zoning ordinance: "No dwelling or group of dwellings shall hereafter be erected or altered to accommodate or make provision for more than fourteen (14) families on any acre of land, nor make provision for more than a proportional number of families on a fractional part of any acre of

land." The lots in question are at the northwest corner of Center and Oak avenues. The village hall is immediately west of the lots. The fire station and jail are in the village hall. In the block there are three buildings which have stores on the lower floors and apartments on the second floor. North of the property there are stores that face the street north of it. These stores are barber shops and grocery stores. On the street west of the property there are four or five stores, including a drug store, hardware store, apparel store, electric shop, real estate office and a vacant store building.

On November 10, 1927, appellee applied to the building commissioner of the village of Lake Bluff for a permit to erect an eighteen-apartment building upon the lots in question. The area of the lots is slightly less than 28/100ths of an acre and would have been entitled to accommodate only four families under the ordinance restriction of fourteen families to an acre if the restriction applies to flats. The building commissioner, in writing, rejected the application for a permit on November 19, 1927, on the ground that it did not comply with the zoning ordinance as to intensity of use, stating that other features of the plan had not been examined. On December 2, 1927, appellee filed a written appeal with the zoning board of appeals of Lake Bluff asking that a building permit be issued, and accompanied this appeal with a statement from certain owners of neighboring property consenting to the use desired by appellee. On December 7, 1927, notice was given to appellee that his petition would be considered on December 12, 1927, at which time he appeared and was heard. The board of appeals at a meeting on March 7, 1928, denied appellee's appeal on the ground that no practical difficulties or unnecessary hardship had been shown to warrant the varying or modifying of the application of the ordinance. On March 27, 1928, appellee filed in the county court of Lake county a petition for the statutory writ of *certiorari* to review the decision

of the board of appeals. A return to this writ was made and evidence was heard, which is in the record before this court.

It is contended by appellee that the fourteen-family restriction contained in the ordinance does not apply to flats, and that if it be construed to apply to them the ordinance is unreasonable, discriminatory, unconstitutional and invalid. "The privilege of every citizen to use his property according to his own will is both a liberty and a property right. 'Liberty' includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. (*Ruhstrat* v. *People,* 185 Ill. 133; *Frorer* v. *People,* 141 id. 171; *Haller Sign Works* v. *Physical Culture Training School,* 249 id. 436.) Both liberty and property are subject to the police power of the State, under which new burdens may be imposed on property and new restrictions placed on its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, comfort, safety or welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. (*Ruhstrat* v. *People, supra; Bailey* v. *People,* 190 Ill. 28; *Bessette* v. *People,* 193 id. 334; *People* v. *City of Chicago,* 261 id. 16; *Catholic Bishop* v. *Village of Palos Park,* 286 id. 400.) The legislative determination as to what is a proper exercise of the police power is not conclusive. Whether the means employed have any real, substantial relation to the public health, comfort, safety or welfare, or are arbitrary and unreasonable, is a question which is subject to review by the courts, and in determining that question the courts will disregard mere forms and

interfere for the protection of rights injuriously affected by arbitrary and unreasonable action.—*City of Aurora* v. *Burns,* 319 Ill. 84." *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.

Evidence from experts was introduced by appellants tending to show that there was a relation between the fourteen-family-to-the-acre restriction in the ordinance, as applied to flats, and the public health, safety and welfare, but an analysis of their testimony discloses that it is largely based on the undesirability of flats in a community like Lake Bluff, and, as testified to by one of the experts, on "the fact that the apartment house tends to bring a class of people to the suburban town different from the typical suburban residents, and a class considered by the suburban residents, in the development of their property, as less desirable," and on other æsthetic reasons which have no relation to the public health, safety or welfare. Evidence was introduced by appellee to the effect that there was no reasonable relation between the fourteen-family restriction and the public health, safety and welfare, and that if such restriction applies to flats it is unreasonable and discriminatory as between flats and boarding and lodging houses. From a consideration of all the evidence in the case we are of the opinion that if the section of the ordinance containing the fourteen-family restriction be so construed as to apply to flats it is unreasonable and discriminatory and therefore void. Where two constructions can be placed upon a statute or an ordinance, one of which will render it valid and the other invalid, it is the duty of the court to so construe the statute or ordinance that the same may be held valid, if the court can reasonably do so. In the section of the ordinance in question the term "flat" is not used, but the restriction is confined to a "dwelling or group of dwellings." The words "dwelling" and "flat" are not synonymous and are not used as synonyms in the ordinance in question. The word "dwelling," standing alone, as shown

by Webster's New International Dictionary, means "a single residence, domicile or abode," while the word "flat" means "a floor, loft or story in a building which forms a complete residence in itself," and the term "flat" as it is used in this ordinance is defined as "a building divided into flats." The zoning ordinance in question permits in "C" residence districts, among other buildings, "two-family dwellings and flats." Similar restrictions pertaining to dwellings are found in the sections creating "A" and "B" residence districts, where flats are not permitted. While a flat for some purposes might be considered a "dwelling house," the terms "dwelling" and "dwelling house" are not synonymous. Construing the words "dwelling or group of dwellings" not to include flats, as we must do to sustain the validity of the ordinance, the question of the reasonableness or unconstitutionality of the ordinance does not arise.

Appellants raise the point that the court erred in ordering the building permit to issue for the reason that the plans showed a violation of a "set-back" provision of the ordinance. The petition alleges that the sole ground of the refusal to grant the permit was a violation of the "intensity of use of lot" provision of the ordinance. This allegation is admitted by appellants' return to the writ. While the ordinance in question contains a set-back provision, operative in variant degrees or not at all, dependent upon surrounding conditions, there is here no sufficient proof of surrounding conditions to show that the erection of the building according to the proposed plans would be in violation of the set-back provision of the ordinance, and the court properly held that appellee was entitled to the building permit which he sought.

The judgment of the county court of Lake county is therefore affirmed.

*Judgment affirmed.*