(No. 37216.—

THE PEOPLE *ex rel.* Chicago Title and Trust Company *et al.,* Appellees, *vs.* THE VILLAGE OF ELMWOOD PARK, Appellant.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

HOWARD B. BRYANT, of Chicago, and LESLIE J. SMITH, of Forest Park, for appellant.

WISCH AND CRANE, of Chicago, (MYRON E. WISCH AND BENJAMIN B. CRANE, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County entered in a proceeding for *mandamus* against defendant, village of Elmwood Park, to compel it to issue a building permit for the erection, construction and maintenance of a motel on certain property and for declaratory judgment declaring plaintiffs' rights to erect, construct and maintain such motel, and also for injunction to enjoin

defendant's interference and to compel the village and its officials to permit such erection, construction and maintenance. The village zoning ordinance classified plaintiffs' property as in "B" Specialty Shops District. The decree of the circuit court declared the zoning ordinance void as to the subject property and that plaintiffs have a right to construct a motel and ordered the village and its officers to allow construction of the motel. A direct appeal is taken to this court, the validity of a municipal ordinance being involved and the trial court having certified that the public interest requires a direct appeal.

The village of Elmwood Park lies west of Chicago, extending from North Avenue on the south to Belmont Avenue on the north, and from 80th Street (or Thatcher Road) on the west to Harlem Avenue on the east with the exception of the northeasterly corner of this area which is in Chicago. The subject property is a block lying in the southwest corner of the village. It fronts on the north side of North Avenue approximately 255 feet, lying between 79th Avenue on the east with a depth of 125 feet, and Thatcher Road on the west with a depth of 117 feet. It is bounded on the north by a 16-foot alley. The subject property is vacant, with the exception of approximately the westerly 45 feet which is presently and for more than 30 years past has been used for a restaurant and barbeque stand known as Marsch's Barbeque. This restaurant is located at the northeast corner of North Avenue and Thatcher Road and serves sandwiches, meals, intoxicating liquors and take-out orders. Two smaller buildings are behind the restaurant building, one for dispensing drinks during the summer and a smaller one used as a garbage receptacle. There are two driveways serving this restaurant, one on North Avenue and the other on Thatcher Road. During the summer months, the subject property is used for off-street parking and by 20 to 25 tables, each seating four to six persons for patrons to eat food purchased at Marsch's restaurant.

North Avenue is an important four-lane east-west road known as Route 64 which runs from Lincoln Park, Chicago, to the western suburbs, beyond St. Charles, Illinois. Thatcher Road is a four-lane, north-south road intersecting North Avenue and running along the west side of the subject property. Both roads are heavily travelled.

Immediately adjacent to the north of the subject property, except for a 16-foot east-west alley, and fronting on Thatcher Road for about 300 feet is Russell's Bar-B-Q restaurant which is much larger than Marsch's. It is the same type of business, serving barbeque sandwiches, alcoholic beverages and take-out orders, with about 50 tables and benches outside.

The north side of North Avenue lies within the village of Elmwood Park and is its southern boundary. On the north side of North Avenue between Thatcher Road on the west and Harlem Avenue on the east, an eight-block area, is the subject property running from Thatcher Road to 79th Avenue. The block between 79th Avenue and 78th Court is vacant. The area between 78th Court and Harlem Avenue is built up with stores and shops, including a drug store, liquor store, large shoe center, currency exchange, restaurants, some serving intoxicating liquors and some with off-street parking, bakeries, barber shops, drive-in snack shops, food shops, a dentist office, a medical building, cleaning shops, and art, camera, apparel, floor covering, pet, and furniture shops, a theater and gasoline stations.

The south side of North Avenue lies within the village of River Forest, and between Harlem Avenue on the east and Thatcher Road on the west there are numerous shops and businesses similar to those in Elmwood Park. There is a large supermarket taking up a whole block, with large parking area, a large church, apartment buildings with vacancies, townhouses, and directly across the street from Marsch's restaurant on the southeast corner

of North Avenue and Thatcher Road is the King Cole Drive-in restaurant.

All of the residential property in the village of Elmwood Park is north of Russell's Bar-B-Q. The closest residential property is north of the alley at 79th Avenue on the east side of the street, facing Russell's Bar-B-Q.

North Avenue west of Thatcher Road for approximately one mile is unincorporated area. On the north side of North Avenue is a forest preserve. On the south side of North Avenue the forest preserve extends west about a block from Thatcher Road, then there is a 100-unit motel with a Howard Johnson restaurant. To the west of the motel is a miniature golf course and a warehouse with 150 to 200 trucks parked in front.

The village of Elmwod Park has a population of 25,560 and two thirds of it is residential. By its zoning ordinance passed in 1954, the village is divided into five classes. There is an "A" Residence District with permitted use for single-family residents; and an "AA" Residence District prohibiting buildings therein to be used except for certain uses therein specified as one or more family dwellings, parks, recreation fields and buildings used in connection therewith, private club not used for hotel purposes, boarding and lodging houses, institutions of an educational, philanthropic or eleemosynary nature, public art gallery or museum, duplex houses, apartment houses, library, church, school, temporary uses and buildings necessary in building construction for a period not to exceed one year, and auxiliary uses; a "B" Specialty Shop District, providing no building or premises shall be used and no bulding shall be hereafter altered or erected within said district except for a necessary use to which any of the places is permitted in "AA" Residence District and any of some 30 listed uses which are small business establishments, offices, apartment buildings of over three apartments, restaurants, retail stores and the like; a "BB"

Business District which includes all businesses under "B" Specialty Shop District and other businesses such as auto sales, automobile filling stations and undertaking establishments; and a "C" Industrial District permitting only specified uses of a heavy industrial nature.

The plaintiffs applied to the building commissioner of the village for a permit to build a motel, submitting a sketch plan of a two-story brick motel with 40 units and 42 parking spaces. This was denied. Thereafter, an application to the village board for a variation to the zoning for the construction of a motel was denied.

The principal plaintiff, Harry E. Birtman, testified to the above facts. He stated he acquired lots 27, 28 and 29 in 1946 and has been operating these as a restaurant and barbeque since that time. He acquired lots 23 to 26 in 1957 or 1958 for $50,000 and lots 21 and 22 in 1960 for $25,000. He further testified that there were a dozen or fifteen newly constructed vacant stores on North Avenue between Harlem and Thatcher.

Ronald J. Chinnock, the expert witness for plaintiffs, testified that the highest and best use of the subject property was a properly managed and constructed motel; that there would be no serious damage to the other property from it; that a motel on the property would be of assistance to the owners of the undeveloped property in the immediate area by removing from the market a large parcel of vacant land and would tend to increase property values up to 76th Avenue; that the subject property is zoned for specialty shops normally called a commercial use and is within the descriptive use of specialty shops. He further testified that the present zoning ordinance does not encourage the well-being and activity of the business interests of the people in the immediate area and does not promote the general welfare, morals, health and safety of the public. He also testified that all of the residential property of Elmwood Park is

north of the subject property and that a motel will not lessen the value of the residences in that area. He testified that to put up a three-story, walk-up type building or a two-story town house type building in today's market was unadvisable.

Carl L. Gardner, a planning and zoning expert, testified similarly and in addition that a motel was a compatible type of business use at this location.

Among witnesses for the defendant, George H. Kranenberg, an expert on city planning, testified that the highest and best use of the subject property was for apartment structures or multiple-family dwellings. A real-estate broker and a lawyer living in the area both testified that they objected to a motel and that a motel would depreciate the value of their respective properties.

The village contends that the reasonableness of the ordinance as applied here is fairly debatable, that a zoning ordinance is presumed to be valid and where the reasonableness of the classification is fairly debatable, the judgment of the village board will prevail. To be certain that is a general rule of law laid down by this court. (*Bredberg* v. *City of Wheaton,* 24 Ill.2d 612; *Cosmopolitan National Bank* v. *City of Chicao,* 22 Ill.2d 367.) However, the mere fact that defendant municipality introduced evidence in support of the ordinance does not mean that the reasonableness of the ordinance is debatable within the rule. As we said in *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40, 47: "Difference of opinion does not render plaintiffs' evidence unbelievable or require a finding that the reasonableness of the ordinance is debatable." Likwise in *Weglarz* v. *Village of Villa Park,* 21 Ill.2d 202, 205, we stated: "The general rules of zoning law are so familiar as to be axiomatic, and their repetition is no longer necessary for an adequate disposition of questions such as presented here. The issues in this type of litigation are concerned not so much with the development of law as with variations in

facts; and the basic problem, like that in negligence and compensation cases, is simply one of applying the same rules, over and over, to different factual situations."

In *Hartung* v. *Village of Skokie*, 22 Ill.2d 485, we set forth the applicable rules of law and the factors to be considered in determining validity. The pertinent factors to be considered in determining the validity of a zoning ordinance as applied to a particular property are the character of the neighborhood, existing uses and zoning of nearby property, the extent, if any, to which property values would be affected by the particular restrictions, the relative gain to the public as compared to the hardship imposed upon the individual property owner, and the suitability of the subject property for the zoned purpose. Considering the evidence of this case in light of the applicable considerations, the zoning ordinance restriction as applied to plaintiffs' property bears no real and substantial relationship to the public health, safety, morals and welfare but causes great hardship to the plaintiffs and no great gain to the public. The requested use of the property for a motel is compatible with the character of the property in the area.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*