HARRIS BANK OF HINSDALE, as Trustee, Plaintiff-Appellee, v. THE COUNTY OF KENDALL, Defendant-Appellant.

Second District No. 2—92—1427

Opinion filed December 8, 1993.—Rehearing denied January 19, 1994.

Dallas C. Ingemunson, State's Attorney, of Yorkville (William L. Browers and Norbert J. Goetten, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Daniel J. Kramer, of Law Office of Daniel J. Kramer, of Yorkville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, the County of Kendall, appeals from a declaratory judgment which decreed that a zoning ordinance was void and invalid and enjoined defendant from enforcing the zoning ordinance. The zoning ordinance denied plaintiff's petition to rezone land it owned in Kendall County from agricultural to residential zoning. On appeal, defendant contends that the declaratory judgment was against the manifest weight of the evidence. We affirm.

In April 1989, plaintiff, Harris Bank of Hinsdale, as trustee of a land trust, purchased a farm consisting of approximately 330 acres (the land) in Kendall County (the county). At that time, the land was zoned A-1 (agricultural). Plaintiff purchased the land with the intent to seek rezoning for development as a residential subdivision.

The land is surrounded on all sides by farmland. Plaintiff currently rents the land's 277 tillable acres to a farmer. The land is situated approximately one-tenth of a mile south of Millbrook, an unincorporated village with a post office, a local volunteer fire protection unit, a school and a few local businesses. The land is located on the east side of Fox River Drive, the main road in the area, which runs

north five miles to the town of Plano. There are several other towns within a four- to eight-mile radius from the land.

The county adopted a comprehensive plan in 1974 and updated its comprehensive plan in 1984. The county's comprehensive plan includes an "Official County Land Plan" which clearly shows that the land is within an "urbanizing area" which has the potential for growth and development.

Although the area surrounding the land is predominantly agricultural, the county has approved three subdivisions for residential development in the township in which the land is located. These subdivisions and the land are all located within the urbanizing area denoted in the county's comprehensive plan.

In June 1989, plaintiff petitioned the county to rezone the land from A-1 to R-3 (residential). R-3 zoning requires a minimum lot size of 45,000 square feet, slightly larger than one acre. Plaintiff hoped to develop 182 residential lots on the land in question.

The county has five bodies which review a petition for rezoning. The five bodies are: (1) the zoning board of appeals (ZBA); (2) the zoning planning advisory commission (ZPAC); (3) the regional planning commission; (4) the building and zoning committee of the county board; and (5) the full county board.

Each of these five bodies reviewed plaintiff's petition for rezoning and recommended approval of the petition. In recommending to the county board that the petition be granted, the ZBA made the following findings:

> "a. The existing uses and the zoning of the property in the area is farming with residential property.
>
> b. The property is marginal farm ground.
>
> c. There is some growth trend of development in the area.
>
> d. Reclassification would be in the public interest and would not serve solely the interest of the applicant."

None of the other bodies included specific findings in their recommendations. The planning commission recommended approval under the county's planned unit development (PUD) ordinances and listed specific PUD requirements for development. In December 1989, the county board tabled the final decision on rezoning the land pending review as a PUD.

Plaintiff subsequently resubmitted the petition for rezoning as a PUD petition. The building and zoning committee, ZPAC, and the ZBA, each recommended approval of the PUD petition. The ZBA made the following findings:

"a. The existing uses and the zoning of the property in the area is agriculture and residential.

b. Present zoning of property in the area is mixed.

c. The property is adequate for farming.

d. There is some growth in the area.

e. Reclassification would be in the public interest and would not serve solely the interest of the applicant."

Plaintiff's PUD petition incorporated all of the previous recommendations made by the planning commission. Nonetheless, the planning commission recommended denial of the PUD petition. On July 10, 1990, the county board voted six to four in favor of approval of the PUD petition. However, the vote was insufficient to approve the petition because a statutory provision required a three-fourths majority to overcome legal objections to the petition.

Plaintiff subsequently brought a three-count complaint against the county. Count I sought a declaratory judgment. Count II alleged breach of contract, and count III sounded in estoppel. The parties agreed to the dismissal of count II, and the trial court determined that count III was moot. Defendant does not appeal the disposition of counts II and III.

At the trial, each side presented a number of witnesses. Plaintiff called a real estate appraiser who opined that: the highest and best use of the land was residential; residential development would increase the value of the land; and residential development would also increase the value of the surrounding land. One of plaintiff's owners, the managing partner of the land trust, testified that plaintiff paid for a school impact study and made contributions to the schools and other government bodies in excess of the amounts required by ordinances. Plaintiff called the president of the school board, who testified that no other developer had made cash contributions in excess of the required amount. A farmer whose farm adjoins the land was called by plaintiff and testified that he did not fear that rezoning would harm his farm. Finally, a landscape architect called by plaintiff opined that: the purpose of the urbanizing area in the comprehensive plan was to preserve agricultural land and at the same time accommodate development; the land has special characteristics, such as woods and swales, which make the land attractive for development while minimizing the loss of agricultural land; and plaintiff's proposed residential development is well done, compatible with the comprehensive plan, and consistent with previously approved residential subdivisions.

Defendant's witnesses included a real estate appraiser who criticized plaintiff's appraisal report and opined that the best use of the

land was farming and that value of the land could decrease as a result of residential development. Defendant presented two farmers, whose farms were not near the land, who testified that residential development can cause problems for farmers. A soil scientist called by defendant opined that 80% of the land was prime farmland. A regional planner, recently hired by defendant to update its comprehensive plan, Lane Kendig, opined that the county's comprehensive plan was based on projections which had not been realized and under a revised plan based on actual development, the land might be outside the growth corridor envisioned by the county's comprehensive plan.

After the trial, the trial court filed a seven-page letter of decision. The letter of decision stated that the parties were in basic agreement as to the factors to be considered in determining whether plaintiff met its burden of proof in overcoming the presumed validity of defendant's zoning ordinance.

The court concluded that the majority of the factors favored plaintiff. The court then stated:

"Not only do the majority of the factors favor plaintiff, but those particular factors, when considered and applied to the facts and circumstances of this case, are clearly the more substantial factors. Accordingly, it is the finding of the Court that plaintiff has met its burden in overcoming the presumptive validity of the zoning ordinance and, as applied to plaintiff's property [the ordinance], is arbitrary, unreasonable, and without substantial relation to the public interest."

On November 6, 1992, the trial court filed and entered a judgment order. The order decreed that: (1) defendant's zoning ordinance, insofar as it prevented plaintiff from developing the subject property, was "arbitrary, unreasonable, and without substantial relation to the public interest and is therefore void, invalid and of no force and effect"; (2) plaintiff was entitled to develop the subject property pursuant to the PUD; and (3) defendant was enjoined from enforcing the provisions of the zoning ordinance "in any manner that would prevent the Plaintiff from developing the Subject Property pursuant to the [PUD]."

Defendant filed a timely appeal. Plaintiff subsequently filed a motion, which was labeled a post-trial motion, seeking additional reasoning or clarification of the reasoning underlying the trial court's letter of decision. At a subsequent hearing, the trial court denied defendant's motion to strike plaintiff's motion on the ground it was not a proper post-trial motion. On appeal, the parties agree there is no ju-

risdictional issue related to whether defendant's motion was, in fact, a post-trial motion. We determine that we have jurisdiction.

We note also that plaintiff attempts to renew its objection to the alleged late filing of defendant's appeal brief. However, we will not reconsider that issue because this court previously considered and denied plaintiff's motion to dismiss defendant's appeal on the same grounds.

At the post-trial hearing, the trial court elaborated on the reasoning underlying its judgment. The court noted that it had found "not only by the standard of clear and convincing evidence, but by the even higher standard of beyond a reasonable doubt that the plaintiff did overcome the presumptive validity of the County Board's decision," and that the zoning ordinance was "arbitrary and unreasonable without substantial relation of the public health, welfare and safety."

The law governing the validity of zoning ordinances is well settled in Illinois. A zoning ordinance is presumptively valid, the party contesting the zoning ordinance has the burden of proof, and the party may overcome the presumption of validity only by clear and convincing evidence. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.) A party challenging a zoning ordinance must show that the ordinance, as applied to the property in question, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 180; *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310.

■■ Illinois courts consider various factors in determining the validity of a zoning ordinance. Among these are the *La Salle* factors, which are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. (*La Salle National Bank*, 12 Ill. 2d at 46-47.) Among the other factors that a court may take into account is the compatibility of the proposed use with an existing comprehensive plan. *Family Christian Fellowship v. County of Winnebago* (1986), 151 Ill. App. 3d 616, 619.

A court should base its determination of the validity of a zoning ordinance on the facts and circumstances of each case. (*La Salle National Bank*, 12 Ill. 2d at 46.) No single factor is controlling. (12 Ill. 2d at 47.) However, the first *La Salle* factor, the existing uses and zoning of nearby property, is of paramount importance. *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309.

It is the province of the trial court to determine the weight to be given to conflicting testimony. (*La Salle National Bank*, 12 Ill. 2d at 48.) A reviewing court will not disturb a trial court's determination of the validity of a zoning ordinance unless that determination is against the manifest weight of the evidence. *Illinois National Bank & Trust Co. v. County of Winnebago* (1960), 19 Ill. 2d 487, 495.

Here, the trial court specifically considered seven factors in its letter of decision. The factors the court considered were the comprehensive plan factor and the six *La Salle* factors. The court determined that the comprehensive plan factor and *La Salle* factors one, three and four weighed in plaintiff's favor and were, under the circumstances, "clearly the most substantial factors."

The court later elaborated on the reasoning underlying its decision. The court reiterated that the majority of the most important factors favored rezoning. The court concluded there was no credible evidence to show a substantial relation of the zoning ordinance to the public health, safety, or welfare. The court stated that under these circumstances it had no alternative but to find the zoning ordinance arbitrary and unreasonable.

On appeal, defendant contends that the trial court's judgment was against the manifest weight of the evidence. Defendant argues that the trial court misallocated the burden of proof, overlooked or misapplied some of the factors, made inconsistent findings, and gave undue weight to the comprehensive plan and the findings of the ZBA.

Based on our review of the record, we conclude that the trial court's judgment was not against the manifest weight of the evidence. We find that the totality of the evidence, as well as the evidence related to the individual factors, which the trial court determined favored plaintiff, was sufficient to support the trial court's decision.

The trial court largely based its decision on the credibility of the witnesses and the weight to be given to conflicting testimony. A reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact, particularly with respect to credibility determinations. *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 180.

■ The trial court first considered the comprehensive plan factor. The court found that plaintiff's land was clearly within the urbanizing area demarcated by the comprehensive plan. The court then determined that there was no credible evidence to show why defendant deviated from its comprehensive plan. This was based on two findings: (1) that the county had previously approved rezoning for other subdivisions rezoned for residential development within the urbanizing area; and (2) that the testimony of defendant's witness, Kendig, implying that the comprehensive plan's urbanizing area might no longer apply to the land, was "the least credible of any the [sic] witness who testified in this trial." These findings of the trial court support a conclusion that rezoning the land in question was compatible with the comprehensive plan.

The trial court also determined that the first *La Salle* factor, the existing uses and zoning of nearby property, favored plaintiff. The court recognized the general rural nature of the area, but also weighed the following in reaching its determination: the ZBA findings that the existing uses and zoning of the property in the area were mixed agricultural and residential; the closeness of the land to Millbrook and its grade school; and the other residential subdivisions located nearby with characteristics similar to those plaintiff proposed for its residential subdivision.

The court noted that defendant relied on *City National Bank v. County of Kendall* (1986), 140 Ill. App. 3d 933, for the proposition that residentially developed land near farmland is an insufficient basis to overcome the presumptive validity of a zoning ordinance. The court found that defendant's reliance was inapposite and distinguished *City National Bank* because the property in question in that case violated the county's comprehensive plan, while the property in this case conformed with the comprehensive plan.

■ The court found that under the facts and circumstances of this case, the first *La Salle* factor weighed in plaintiff's favor. Because an opposite conclusion was not clearly evident, we cannot overturn the trial court's finding even though we might have reached a different conclusion than that reached by the trial court. (*In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549; *Swanson v. Village of Lake in the Hills* (1992), 233 Ill. App. 3d 58, 64.) Accordingly, we cannot say that the trial court erred in its conclusion that the first *La Salle* factor favored plaintiff.

■ The next factor that the trial court determined favored plaintiff was the third *La Salle* factor, the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or

general welfare of the public. Here, the trial court weighed evidence tending to indicate that rezoning would be in the public interest against evidence that it would not be in the public interest. The court determined that the following evidence indicated rezoning would be in the public interest: a rebuttable presumption that rezoning compatible with a comprehensive plan would be in the public interest; the ZBA finding that the land was only marginal or merely adequate for farming; and the ZBA finding that rezoning would be in the public interest. The court found defendant's evidence not credible. For example, the court concluded that the testimony of Donald Fehrenbacher and Kendig, defendant's witnesses who testified that much of the land was prime agricultural land and therefore should be protected, was of questionable credibility because the witnesses did not conduct on-site soil analysis to confirm or dispel their opinions.

Having given the trial court findings deference, we cannot say that the trial court erred in concluding that the third *La Salle* factor favored plaintiff.

We are not persuaded by defendant's arguments that the trial court shifted the burden of proof and gave undue weight to legislative findings. The record shows that the trial court carefully weighed the evidence on both sides and concluded, in part because it found defendant's evidence not credible, that on balance the evidence favored plaintiff. We will not disturb the trial court's findings.

■ The next factor that the trial court determined favored plaintiff was the fourth *La Salle* factor, the relative gain to the public as compared to the hardships imposed upon the individual property owner. Noting there would be little hardship to the plaintiff if rezoning was denied, the court weighed the likely gain to the public if rezoning was approved against the hardship to the owner if rezoning was denied. Evidence indicating a gain to the public included: ZBA findings that rezoning "would be in the public interest and would not serve solely the interest of [plaintiff]"; plaintiff's contribution to the schools in excess of the required cash contribution; plaintiff's contributions to the highway department; and the dedication of 42 acres of the land to the county's forest preserve district. On the other side, the court found "no credible evidence" that would establish detriment to the public interest. The court stated that it was relying on the credibility of the witnesses. The court specifically noted that the credible testimony of the president of the school board that rezoning would be in the best interest of the school district outweighed the attempts of defendant's attorney to "twist" the testimony to the contrary.

Again, because the court's conclusion largely rested on contested facts and the credibility of the witnesses we cannot say that the trial court erred in its conclusion that the fourth *La Salle* factor favored plaintiff.

When viewed in its entirety, the evidence shows that the majority of the *La Salle* factors and the comprehensive plan factor favor plaintiff. In addition, the only findings by any of defendant's zoning petition review bodies, those of the ZBA, supported rezoning. Moreover, the trial court found, in its role as fact finder, that defendant did not present any credible evidence showing that the zoning ordinance bore a substantial relationship to the public health, safety, or welfare.

■ For all these reasons, we agree with the trial court that plaintiff overcame the zoning ordinance presumption of validity and that the zoning ordinance was arbitrary and unreasonable as applied to this property. Accordingly, we determine that the trial court judgment was not against the manifest weight of the evidence.

The judgment of the circuit court of Kendall County is affirmed.

Affirmed.

BOWMAN AND DOYLE, JJ., concur.